(85 South. 276)

STATE ex rel. PATTERSON, State Solicitor, v. ONE FIVE–PASSENGER PAIGE AUTOMOBILE et al. (5 Div. 733.)

(Supreme Court of Alabama. Jan. 29, 1920.)

1. Intoxicating liquors ⊕═251 — Claimant to automobile seized must show that he or those under whom he claimed did not have notice of use.

Under Acts 1919, p. 13, § 13, it is not enough for claimant to automobile seized for illegal transportation of liquor to show that the use was without his knowledge or consent or the knowledge or consent of those under whom he claims, but he must show that he or those under whom he claims did not have knowledge or notice or could not by reasonable diligence have obtained knowledge or notice.

2. Intoxicating liquors ⊕═251—One receiving transfer of conditional sale contract to seized automobile held not to have shown a "superior title or claim" in seizure proceedings.

One who, after seizure of automobile for illegal transportation of liquor, received transfer of conditional sale contract for the automobile having paid installment of price as a volunteer before seizure, and at instance of defendant's wife, installment after seizure, did not show a "superior title or claim" to property within meaning of Acts 1919, p. 6, § 13.

Gardner and Sayre, JJ., dissenting.

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Bill by the state of Alabama, on the relation of its solicitor, T. M. Patterson, to condemn one five-passenger Paige automobile in the possession of John C. Collins, because engaged in illegal liquor traffic, with claim by L. L. Purvis. From the decree rendered ordering the sale of the car, the costs of the seizure and so much to Purvis, with balance if any to the officers and the state, the state appeals. Corrected and affirmed.

The facts sufficiently appear from the opinion of the court.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Purvis could claim no benefit under section 3394, Code 1907, and this case should be disposed of as were the cases of Maples v. State, 203 Ala. 153, 82 South. 183, and State v. Hughes, 203 Ala. 90, 82 South. 104.

Frank M. de Graffenreid, of Seale, for appellees.

This case should be affirmed, on the authority of State v. Hughes, 203 Ala. 90, 82 South. 104.

BROWN, J. This appeal is by the state from a decree of the circuit court condemning and ordering the sale of a Paige automobile under the provisions of the act approved January 25, 1919 (Acts 1919, p. 6, § 13).

The car was seized by the sheriff of Russell county, in the city of Girard, on the 8th day of March, 1919, while in the possession of one J. C. Collins, who was using it for the transportation of prohibited liquors, in violation of the statute.

After the seizure of the car by the sheriff, and the filing of the bill by the state for its forfeiture and condemnation for sale, Purvis intervened, asserting that he had a bona fide claim thereto, and, on final hearing on pleadings and proof, the court entered the decree— from which this appeal is taken—directing the sheriff to sell the car, and to apply the proceeds of the sale as follows:

"First. To the payment of the expenses in this cause including court costs, cost of advertisement, the costs of seizure and of keeping the property, pending this proceeding.

"Second. There shall be paid to L. L. Purvis, claimant, the sum of $949, with the interest thereon accruing from the 3d day of July, 1919, to the date of sale, if there remains a sufficient amount from the proceeds of sale after the payment of the expenses in this cause, to pay said $949 and accrued interest. If the proceeds of sale do not amount to enough to pay the expenses in this cause as above provided, and the said sum of $949 and accrued interest, then after said expenses have been paid as hereinabove provided, the whole remainder of the proceeds of sale shall be paid over to the said L. L. Purvis.

"Third. If said automobile shall sell for a sum more than enough to pay the expenses of this cause, and the said sum of $949 and accrued interest as above provided, then after said sums are so paid, one-fourth of the remainder of proceeds shall be paid to H. R. Ragland, sheriff of Russell county, Ala., the officer making the seizure, furnishing the proof, assisting in the condemnation case, and who makes the sale under this decree, and the remainder of the proceeds of sale shall be paid into the state treasury, as provided by law."

The facts disclosed by the evidence noted on submission, consisting of the pleadings, an "agreement as to facts," and the report of the register on reference embodying the depositions of the claimant, are without dispute.

Collins acquired the car under a written contract of conditional sale from one Kelly on the 3d day of October, 1918, in which Kelly retained the title to the car as a security for the purchase money; the parties then being residents of the state of Georgia. The price agreed to be paid by Collins was $1,550; $650 of which was to be paid in cash and the balance was to be paid in deferred payments of $75 each, payable monthly. On the day the conditional sale was made and the contract executed, Kelly transferred the contract to the Muscogee Bank, and the same was filed for record in the office of the clerk of the superior court of Muscogee county,

Ga., on the 4th day of October, 1918. The bank continued the holder of said contract up until March 12, 1919, after the automobile was seized by the sheriff of Russell county, when it was transferred back to Kelly, and on the same date transferred by Kelly to Purvis, the claimant, who filed it for record in Russell county on the 13th day of March, 1919. Collins some time in January, 1919, and within three months of the recording of the conditional sale contract in Russell county, moved his residence to Alabama. Purvis at the instance of Collins and without any security therefor, other than the promise by Kelly who then had no title to the paper that he would transfer the conditional sale contract to him, paid the installments falling due October, November, and December, 1918, and after the seizure, on the request of Mrs. Collins, paid the balance due on the contract. The agreement as to facts recites:

"That the unlawful use to which said automobile was put by the said John C. Collins was without the *knowledge or consent* of the said L. L. Purvis or of any one under whom he claims title."

From this statement of facts, it is manifest that at the time of the seizure of the automobile by the sheriff neither Purvis nor Kelly had any claim on or title to the automobile. The payments previously made by Purvis were, according to his own statement, made at the instance of Collins and without any security. Purvis was under no obligation to pay the debt represented by the conditional sale contract, but made these latter payments at the instance and request of Mrs. Collins. These facts clearly tend to rebut the bona fides of the claim of Purvis, and to show that he is a mere volunteer in the transaction to save the interest of Collins. Maples v. State, 203 Ala. 153, 82 South. 183.

[1, 2] It is not enough for the intervener or claimant to show that the use to which the vehicle was put was without his *knowledge or consent*, or the *knowledge or consent* of those under whom he claims. He must show that he and those under whom he claims did not have knowledge or *notice*, and could not, by the exercise of reasonable diligence, have obtained knowledge or notice of the unlawful use of the vehicle. State ex rel. Tate v. One Lexington Automobile, 84 South. 297;[1] State v. Crosswhite, 203 Ala. 586, 84 South. 813; State v. Hughes, 203 Ala. 90, 82 South. 104.

The evidence does not meet this burden of proof, and hence does not show that Purvis had, within the meaning of the law, "a superior title or claim" to the property in question.

The decree of the court below, in so far as it directs the payment of a part of the proceeds of the sale to Purvis, will be corrected so as to direct the payment of the proceeds remaining after the costs and expenses incident to the seizure, including the sheriff's commission or fee, into the state treasury as required by law.

Corrected and affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and THOMAS, JJ., concur.

GARDNER, J. (dissenting). The decision in this case is rested upon the authority of State ex rel. Tate v. One Lexington Automobile, 84 South. 297,[1] and State v. Crosswhite, 84 South. 813,[2] present term; and the result here attained is supported by these cases.

I am unable to agree, as I entertain the view that the above-cited cases (in the consideration of which the writer and the Justice concurring in this dissent did not participate) are unsound and constitute a departure from the original holding of this court construing this condemnation statute in the cases of State v. Hughes, 82 South. 104,[3] and Maples v. State, 203 Ala. 153, 82 South. 183. In the Hughes Case, supra, this court said:

"The statute therefore clearly never contemplated condemning and selling the property of those who did not aid or assist in the illegal act, or who were not chargeable with notice or knowledge that their property was to be used for such illegal purpose. It seems to us too clear for argument that the Legislature did not intend that the property of a person wholly innocent of any intent to violate the law, or to aid or assist another in violating, and without knowledge or notice of facts to put him on notice that his property was to be used in violation of the statute, should be confiscated. * * * It is perfectly plain that the lawmakers intended to forfeit and confiscate only the property interest and right of those who were culpable as to its use in violating the law. It is not necessary to the forfeiture that the owner be guilty of the crime or offense of unlawfully transporting the liquors; but it is necessary that he be culpable or derelict in the use of his property in allowing it to be used for an unlawful purpose."

In the Maples Case, supra, the court held this reasoning as directly applicable to the situation of a bona fide mortgagee, "innocent of, or without fault as to," any illegal use of the property.

An analysis of the case of State v. One Lexington Automobile, supra, will disclose that the vendor who held the conditional sale contract was entirely innocent of any illegal use of the property at the time of sale, as well as subsequent thereto, and, indeed, that the vendee also had no notice or knowledge of such illegal use prior to the seizure. The opinion discloses that the vendor had no notice or knowledge of any facts which would lead to knowledge that any illegal use of the

car was contemplated, and the reversal of the cause is rested upon that part of the admission and proof that the vendor, since the sale and delivery of the car, had not done anything to investigate the way and manner in which the automobile was being operated, nor the character of the persons operating the same, except that they knew it was being operated as a public taxicab in the city of Birmingham. It is upon this admission and proof, which is italicized in the opinion, that the reversal of the case is rested. This conclusion is reached on account of the language in the statute, "or could by reasonable diligence have obtained knowledge or notice thereof."

This language, in my opinion, does not authorize the construction given. The statute was clear in its intent and purpose to punish the guilty, but equally clear in its purpose to protect the innocent. In my opinion, the diligence there referred to is only such diligence as is required when such suspicious facts, or circumstances are brought to the knowledge or attention of the owner, or mortgagee, as would be calculated to arouse the interest of an innocent person and stimulate a reasonably prudent one into activity.

The decision in the Lexington Automobile Case, supra, which was followed in State v. Crosswhite, supra, places the duty upon the owner, or otherwise innocent mortgagee, to keep a watchful eye upon the property which leaves his possession—requires of him investigation, and, in fact, places such a burden upon him as, in my opinion, in the practical affairs of the business world cannot be reasonably expected. This condemnation statute not only includes automobiles but any vehicle, such as buggies, wagons, and the like. Thousands of these conveyances are sold during each season, and either mortgages or retention title notes taken to secure the balance of the purchase price. To hold that the sellers of these vehicles are under an obligation, by virtue of this statute, to make investigation and keep a watchful eye upon the property after it has left their possession, would place upon them a burden impracticable in its operation, such as would seriously impair the business world, and such as, in my opinion, is clearly not the legislative intent.

I entertain the view that what was said by this court in construing this act in the Hughes Case, supra, and subsequently adopted in the Maples Case, is a sound interpretation of the language of the act and correctly stated the legislative intent; and that the foregoing decisions of State v. One Lexington Automobile, and State v. Crosswhite—although doubtless not so intended—are in fact a departure from these former decisions and should not be adhered to. They are, in my opinion, of far-reaching influence, and I have thought the question of sufficient importance to briefly give the reasons for my disagreement therewith.

I therefore respectfully dissent.

SAYRE, J., concurs in the foregoing views.

<hr>

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes